Good morning, Your Honor. I'm here on behalf of Mr. Lopez Esmurria. I'd like to reserve three minutes as rebuttal, and I'd also like to point out to the Court that this is my first argument before this Honorable Court. I don't think we're going to let you off easier than that. This is a unique and exceptional case that we believe deserves careful consideration of this Court, particularly since it sort of challenges or calls into question this Court's present, I guess, binding case law under Greer with allowing a district court to have a case that is not a district court. I don't think we're going to allow a district court judge to use a standard of proof that's lower than beyond reasonable doubt using a preponderance standard. You know, it's interesting. I was thinking about why the judge did what he did, which is to let the jury consider drug ranges in their deliberations and to come to a conclusion. When the judge proposed that, it seemed a little odd, since he could certainly make those decisions by a preponderance of the evidence. Did the lawyer say, Judge, what's going on here? Why are you doing it? Was there any objection? Judge, from my reading of the record, there was not. Interesting enough, the judge here, she, and I wasn't trial counsel, she as well as the other parties had agreed that I think essentially in conformity, in compliance with the most recent decision in the lane where the Supreme Court has held that any facts that trigger a punishment in excess of beyond reasonable doubt, is anything that would trigger the mandatory minimum, I think, would have to go to the jury. That's what she did, though, isn't it? She said, I don't know if this case qualifies for the mandatory minimum, so I'm going to let the jury decide these drug ranges to see if I have the sentence in accordance with the mandatory minimum. I don't recall that language coming from the trial court, other than I think the parties that agreed. Well, maybe you can look at it that way, because I think that's exactly what happened. The judge did say, I'm going to give these drug ranges to the jury to see if this defendant qualifies for sentencing as under the mandatory minimum penalties required by statute. That's why she decided to let the jury decide the issue. I think that's a fair characterization of the record. But then in pulling it from one section to another section, hasn't she violated a lane? I'm sorry, that's our position, that she in fact violated a lane. She moved from a lower mandatory minimum to a category with a higher mandatory minimum, higher than what the jury had indicated was their fact-finding. That's an Elaine violation, isn't it? So don't we have to send it back? That's our position. If you send it to the jury and say, hey, we want to comply with Apprendi, we want to comply with Elaine, do the facts… The jury's essentially asking, not only in the typical case, check him off guilty or not guilty, but they're asking, if you find guilty, you specifically asked to find beyond a reasonable doubt, what quantity is Mr. Lopez's moral responsibility? She was looking for unanimity, and she couldn't get it before. The jury came back and said they couldn't agree, right? No, the jury did in fact come back and check off. Well, they ultimately… He was responsible beyond a reasonable doubt for 500 grams or less of cocaine and 100 grams or less of heroin. But didn't it really say in returning that verdict sheet that he couldn't, you can't find him guilty of a higher amount? That's what you're arguing. That's what trial counsel argued, and that's what we argued on appeal, that if you follow the dictate of Elaine and Apprendi, those cases essentially, the Supreme Court was clear and unequivocal that it is the function of the jury, not the judge, to determine specific, making specific factual findings that are going to increase the mandatory minimum. But the judge has the right to do that. Well, the judge has the right to say a discernible amount. But when the judge gives various definitions, and the jury chooses a definition that falls under Section 841B-B, and the judge then later sentences under 841B-A with a higher mandatory minimum, hasn't the judge violated Elaine? That's exactly our position. We think that the trial court did violate Elaine. Can I first add a little bit to your response to Judge Roth? I was under the impression that there was no mandatory minimum in this case. The indictment... Did the judge, the trial judge and the sentencing judge determine that there was, in fact, a mandatory minimum? The judge didn't use those specific words, Your Honor. But how do you have an Elaine violation if there's no mandatory minimum? It's a violation because if the sole purpose under Elaine is to submit it to the jury, to get a specific fact finding, the jurors have made that finding beyond a reasonable doubt. Now the court, in effect, has allowed that sentencing. The prosecution, essentially, if we try this guy and say... It causes the question, why even have the special verdict for him? The sentence was ultimately between the guideline range, was it not? It did not exceed the maximum. That's correct, Your Honor. It did not exceed the mandatory maximum. But it changed the statutory subsection. Okay. And we believe that... There was no Apprendi violation. There was no Apprendi violation. And I think what's troubling is if you even look at all the other circuits that have had a similar, somewhat nuanced circumstance, they speak to, well, did it violate Apprendi? It didn't go over the statutory maximum the judge would have under its discretionary powers to go from zero to 20, if the maximum was 20 years. But here, we maintain that the jury was asked that specific question, gave a specific answer, and then... It's a troublesome case. Your argument is that the judge is locked in by the issue that he gave to the jury. That's correct. But the jury... Chief. Oh, I'm sorry. That's okay, Chief. I've been corrected on both sides. Of course. I stand corrected. Now I lost the train of thought. The judge is locked in by the instruction she gave to the jury. Yeah, the judge is boxed in by the instruction she gave the jury, and that's your position. It is, Your Honor. But this was my follow-up question. The jury decides issues beyond a reasonable doubt. That's the burden, right? Correct. They have to be satisfied of the evidence beyond a reasonable doubt. But that's not the same burden with the judge. The judge makes decisions regarding sentencing by a preponderance of the evidence. So what you're suggesting is that the jury's decision completely eliminated the judge's, by a preponderance of the evidence finding when it came to sentencing. Actually, Your Honor, in my briefing, and I'll concede that the judge did have discretion. The judge had discretion in as much as it complied with the jury's determination. So if the jury said 500 grams, the judge would have the discretion to say, okay, between 0 and 500, because it was 500 grams or less. So I think there was an ambiguity. So the court certainly had the discretion. Under Greer, this court set out a preponderance standard. But we submit that even under Greer, Greer heavily relied, this court heavily relied on McMillan and Harris, which were overturned, in effect, by a lay. Did you say that the sentencing judge could never consider circumstances, even though there's been an acquittal on an issue, that the sentencing judge could never take that into account? Our position is it should not. However, recognizing that certain circumstances of acquitted conduct is permitted. But this is a case. I was not able to find a case in which you gave a special verdict to a jury with specific amounts, and then the judge unilaterally. I mean, to the incredible disparity between what her finding was versus what the jury's finding were. And when you consider that, I think it calls into question then, okay, what can we do under Greer? What's the judge's authority under Greer? And we submit that the court cannot contravene under the Fifth or Sixth Amendment a jury's determination. I've not seen a case like this either, Mr. Rivera. It's very novel. But did the parties agree on the verdict sheet that was sent to the jury? In my recollection of the record, yes, Your Honor. The judge, the prosecutor, and trial counsel all agreed that we're going to submit this to the jury. Not only are we going to ask them to determine it's their guilt, but we're going to specifically ask them. And I've had these cases myself during trial where you say to the jury, for purposes of trying to comply with Elaine and Apprendi, was it more than five kilos or more, less than five kilos or more, or less than 500 grams? That's what happened in this case. That's exactly what happened in this case. And when the jury checked off, yes, he's guilty of the predicate offense, a possession with the intent to deliver, we further find in the language and the verdict from his own equivocal, says beyond a reasonable doubt, we also find that he was responsible 500 grams or less than 500 grams of cocaine and less than 100 grams of heroin. And I think it's a travesty when you consider that at sentencing, really, the prosecution presented no additional testimony. They called the drug expert. But they didn't call any of the witnesses who were called at trial. Essentially, the court on the record says, the trial court says, well, no, no, I listened to these witnesses carefully. I deliberated on what they testified. I find that what they said was overwhelming, all of which was contrary to the jury's finding. And I don't think this would be the case. The trial court has the authority to do that. Are you saying there's no evidence in the record that supports the amount of drugs that the judge found? Our position is that. I mean, there's a dispute, by the way, between Angel and Arroyo, because I don't know how you put the two of them together. You can't, really. But there is evidence in the record to support what the judge found. Isn't that right? Conceivably, there may be. Our position that we felt in my second case was that there were any circumstances or credible evidence that the judge could find that quantity. But if you believe that the judge had the authority to do that, then, again, why have a special verdict for him? Why not just finally, why not just say? Because they agreed on it, apparently. Well, and that's right. The jury is given this issue, and then they're told you have to decide these issues, these drug quantities, beyond a reasonable doubt. So the standard is very high. But that's not the same standard that the judge uses in imposing sentence. So, I mean, maybe if the jury was told you can make this decision by a preponderance of the evidence, they may have found higher drug quantities. But they had a much stricter standard. Then it goes to the judge, who functions under a less strict standard, and the judge is considering all of the evidence and considering larger amounts of drug quantities. What's wrong with that process? Essentially, it contravenes the jury verdict's determination that had a higher standard. Because it moves it from one subsection of 841 to another subsection of 841 with a higher mandatory minimum, and doesn't Elaine say that's a violation? It is. And I think that the court doesn't use, hey, this, you know, I find that the drug amounts sold by the government exceeded what the jury's finding was. I think what's interesting in this case is that the judge essentially says, and this is our perspective, is we don't care what the jury determined. My determination based on a lesser standard, based on grit, which I think is somewhat shaken by Elaine, I'm permitted to do this. Let me ask you a somewhat different question. The judge relied on Arroyo's testimony, right? And where does Arroyo say that he went 16 times to Santana? I guess it's Santana. The real big drug guy. Yes. The Boston guy. Yes. Yeah, that's right. Where does it say that he went and picked up both heroin and cocaine? Because the assumption for the judge is that he picked up both. But I can't find, can you show us where in the testimony it says that? I could not find that either, and I think that's why the jury came back with the quantity that they did. And so our position is that the heroin was less. Based on someone testifying, one of the witnesses testifying, hey, at one point he requested this from me or somebody requested this from me. Well, they did it on the size of the package. I mean, but I don't know where that appears. Well, we'll ask the government. The government is going to have to show us where. Yes, you're right. Thank you very much. Mr. Bloom. May it please the Court, my name is Darrell Bloom and I represent the United States. Here the district court did nothing to raise the mandatory minimum or the maximum in this particular case and correctly apply the penalty provision. Well, how do you differentiate between, there is a different mandatory minimum under 841B and 841, I'm sorry, 841BA and 841BB, right? Actually, there are different subsections. It would be 841B1A and then B1B and then B1C. Here the jury is the one that made that determination that it would come under 841A1C, which is no mandatory minimum and no mandatory maximum in this particular case. Therefore, the district court was well within our discretion to sentence up to including the statutory maximum in this case, which would be 240 months or 20 years. And that's exactly what the district court did. The district court, knowing that parameter, sentenced the defendant within that guideline range. The law on this issue is well settled from Apprendi to Allain to the case in Greer. There's several other cases that address that as well. Corley, certainly as this court, Judge Fuentes is well aware, Corley addressed whether or not the district court has the ability to establish the drug weight, and that's exactly what the court did. And as noted by this court earlier, the standard is much different. We don't know if the jury would have found these drug quantities by preponderance of the evidence because that issue wasn't before them. The issue before them was, was it beyond a reasonable doubt? And they didn't find it beyond a reasonable doubt. There are certainly 12 people. We don't know what the split was. We don't know what the other factors were. But it certainly then goes to the district court to make the determination about what the drug weight is. And taking it to its logical terminus, if you really look at any of the sentencing factors, not just drug weight, but maintaining the premises for purposes of drug trafficking, firearms, anything that factual matters that are well within the gambit of what the district court is required to make a determination, to determine the sentencing guideline, and once the guideline is established, then to sentence. And I would note it simply is advisory. They're not really, and Judge Roth, the district court's not changing that subsection. The district court is actually sentencing within that subsection, which is the H41B1C. The thing in this case, though, that is very, to me at least, is unique, is that the judge allows the jury to make a decision with regard to quantities of drugs or ranges of drugs for sentencing purposes. Now, drug quantity has a big effect on the sentence that anybody may receive. So the idea of giving those ranges to a jury was very surprising to me. Is this a common practice? Absolutely. And, Your Honor, with all due respect, I think it's absolutely required. I think Apprendi absolutely requires that. Apprendi has to do with the other side of the range, the top. Well, in fact, what we have here is you have any fact that raises the statutory maximum. And if you look at the cases of Apprendi, Elaine, any fact that raises the statutory maximum, and in this case it would be the drug weights, the drug quantities, would have to go to a jury beyond reasonable doubt. And in Cunningham, that's one of the courts that they addressed a California case. There was a statutory maximum that was imposed, and it was looking at a 6 and a 12 and a 16 years, and they said there was no discretion there. But if there was discretion there and it was advisory, that would probably be okay. And here, because we are raising the mandatory minimums and the mandatory maximums, or the statutory maximums rather, it has to be a fact. I, as the prosecutor below, not only did I agree to that, I pushed for that, because that would be required. We would have error otherwise to not make that a jury finding. But once the jury makes that finding, then we go to the district court. The district court makes the other findings. And Judge Slobodar, I anticipate a question by you as to the non-heroin. Yeah. I mean, where does Arroyo say that on each trip to the Boston guy, Santana, the defendant got both heroin and cocaine? I can't specifically point to the record in that regard. Don't they make that assumption in coming to the amount? There absolutely is an assumption that he's getting, and that's based upon testimony that he was getting both cocaine and he was getting heroin. But not necessarily on the same trip. And I don't know where they get that from the record. Because he has to be able to say that. I mean, he may have once gotten the cocaine and didn't get as much cocaine as heroin. But he has to, they take 16 times whatever the amount is to reach the amount that they assume he distributed, he possessed and then distributed. That's correct, Your Honor. And that's based upon a number of factors. There were at least several witnesses that testified regarding the drug weight as to quantities of cocaine and heroin that they were getting. Yeah, but they're not specific. They don't tell us. I mean, they make an assumption, for example, that based on the size of the package, and he usually sold more than 125, I think it was. But where is it in the testimony? There has to be some testimony to support the amount that the district court came up with. And I don't know where it is. Absolutely, Your Honor. And I think specifically if you look to the specific quantities, we know the minimum quantities that these individuals, and specifically Freddy Lopez and Maria was getting. So we know the minimum quantities that were being distributed. We know that from Zenaida Arroyo. We also know then that when he was going and how often he was going to get drug quantities. We have testimony from the witnesses. You make the assumption that on each trip he got both drugs. Two times a month. That's correct, Your Honor. But there's no testimony that says that. There's nothing that tells us. I believe there's no specific testimony that he was absolutely getting cocaine and heroin every single time. But I think that based upon the testimony taken in its totality and a preponderance of the evidence standard, I think it sufficiently satisfies that burden. It's an assumption that I'm not sure one can make when you have to find drugs that he sold a certain amount. I understand it. And I don't think there's clear error here. It's a factual finding. Well, if it's not there, it's clear error. But the government's position is that it is there based upon all the witnesses. We know that he was obtaining heroin and cocaine. Can you give us a page? I don't have a specific page, but what I can give you, the court, is I can give the court the page number 565 where the district court said that the evidence is overwhelming. Oh, well, yes, but that's just her assumption. That's just her summary. But there's no fact. I can't find a fact. Now, maybe you can find it and tell us, but I can't find it. Well, I would have to comb through it. I don't think you're taking ñ you can't take in isolation one specific page and one specific fact. Well, how do you get to the amount? But you have to get to the total amount. I understand. You look to the entire case. You looked at all the witnesses, and you put them together to make this determination as to which. He sold both cocaine and possessed and distributed both cocaine and heroin. But I don't know how we get to the amount. And as you said, it's the amount that determines the amount of the sentence. Well, the amount actually doesn't determine the sentence. The amount determines the guidelines, and then the district court, under the advisory guidelines, the district court determines the sentence. And I think that when you look at the totality of the circumstances, look at what the judge said. The judge said that it's beyond all doubt. In fact, she said not only for Congress. Well, the guy was clearly a drug dealer. I mean, there's no question about it. He's as guilty as they come. We know. I mean, that's obvious from all the testimony. But the question is the amount of cocaine. I guess it's really the amount of cocaine that's at issue. Well, the amount of cocaine is we know that if he's there to pick up drugs, and we're going from that, we know that the minimum amount that she spoke about. And he could be picking up heroin. He could be picking up cocaine or heroin, both. And I think that's the testimony from taking all the witnesses that testified that he was picking up both and what he was distributing. Lopez argues that the district court must have relied on witnesses that the jury rejected. How is this not considered unreliable evidence? Well, I think there's two factors. One is we don't know that the jury rejected them. I think that the jury could not have possibly rejected the witnesses in this particular case. Why isn't it a fair inference given that their verdicts were always at the lower end of the ranges that the judge provided? Understood. First, we don't know why they made that determination. I think it's in contravention to the evidence in this particular case. But we know that they have to have at least relied on some of the witnesses because we don't have any hand-to-hand transactions with Mr. Lopez-Ezmaria. Mr. Lopez-Ezmaria was in the supervisor or leadership role. And so he had his wife and there were a number of underlings under him that were distributing drugs. Weren't they his stepsons, Ruiz and Angel? Hector Ramos and Eramis Ruiz were both stepsons. His wife was also involved. There was a Mr. Rodriguez and a Jose Solari that was involved as well, to say a few. But so necessarily the jury had to consider that evidence. And to make their finding as to guilt, they had to make a determination. And that was the evidence that was presented. I don't know that anybody's arguing that he's not guilty of the underlying offenses. The question is, did they pick the right amount? Well, and I think in terms of when you say, did they pick the right amount, I think the government's position would be that would be a contravention to the evidence in this particular case. But nonetheless, the district court is able to make that determination. It's a preponderance of the evidence standard. And similarly, the district court has to make the determination under the other charge, the maintaining drug-involved premises, because there will be no triggering of any mandatory minimum or statutory maximum. So equally, the judge has to make a determination to see what the guidelines are as they relate to count four in this particular case. What is the standard of review for reviewing the judge's factual determinations? I guess that's clear error. The government's position would be the clear error as to the drug. I think there's a number of cases in that regard. Abuse of discretion is the applications of the guidelines to the facts. But I think it's clear error here as to the judge's calculation of drug weight. The court simply said it poured over the transcripts without giving the reason. That's what it said, without giving his reasons for adopting the calculations of the PSR. I think what the court did, and there was a number of factors here. We had a protracted trial, several-day trial, that went into specifically individuals and drug weights. Certainly the district court would be in the best position to evaluate tone, voice inflection, demeanor, things like that, as to credibility. But then we get to the next step. But she never said that I don't accept the – she never really stated why she accepted certain things. Well, what she did was she indicated, I think clear in the record at 565, that she found all the witnesses to be very credible. And that she counted all their testimony and gave all their testimony weight in the determination of what would be proper in this particular case. But we did have a separate – in fact, we had several separate sentencing proceedings as they related to drug weight. One of the individuals that was brought in was one of the step-sons. I think if you look at the record of his testimony, clearly absolutely not credible as to the source of the drugs and some of the things that he had indicated. So, again, I think that we're dealing with, you know, elements versus ingredients or things that go into the court's decision. And that's from Elaine that they talk about that. And so we're not really looking at the drug weight here as being an element of the offense. It's really a sentencing factor. And the court went on to say that the district court's given broad discretion and that this is informed and needs to be informed by judicial fact-finding. And that's exactly what we had here. The district court's making a fact-finding based upon the drug weights that they make a determination of from not only the testimony during the actual trial, but also the testimony during the sentencing phase. We also had Special Agent Shufflebottom testify at the sentencing phase as well as the trial that spoke about Franco Santana and Freddie Lopez-Ezmarie and the quantities that they were getting. Well, Santana was obviously the big drug person in that area. The place must be loaded. Well, this is not the only case that we have from that area. Mr. Bloom, thank you very much. Mr. Rivera? Mr. Rivera, maybe you can pick up on something Mr. Bloom has said just a moment ago, that drug quantity is not an element of the offense. It's a matter that has to be determined by the judge for sentencing purposes. And I think that that's really crucial. And I think Judge Slover's dissent in Greer sort of speaks to what it is that the court is permitted to doing in terms of fact-finding and what the standards should be. I think because Elaine overruled Harris and McMillan, those two cases really is where the Supreme Court initially sort of forged this sentencing factors versus elements. And elements should be taken to the jury. Sentencing factors should lie within the broad discretion of the trial court. But, again, I think the issue here is that after having had the jury decide, it was incredible when I read the record that the justices were wrong. I found them to be absolutely incredible. I found their evidence to be overwhelming. When you look at this case, this was a case more about Fremont Santana than it was Mr. Lopez's Maria. There was no testimony by any agent during that trial that said they saw my client doing anything. Secondly, there was no controlled bias with my client. There was testimony that they saw them doing things. Some of the witnesses called by the government said, hey, I would see my client upon meeting with Mr. Santana. And I'm not discounting that. I'm talking about a large part of the government's case, they went on, hey, we had Title III recorded conversations, none of which involved my client. They had controlled bias with the stepsons, not my client. You're not suggesting that your client was not guilty. I'm not, Your Honor. What I am suggesting, though, is that if the trial court is evaluated, we can see re-evaluating the facts, the credibility, and contradicting what the jury found. And we think that's impermissible in our case. We would ask this court that if the court determines that under standard review, that it was preponderance of the court to answer your question, Your Honor, we believe that this is a gross deviation from what the Fifth and Sixth Amendment call for, and we think that trial court should be. So I understand the position that's taken here. Drug quantities is an issue for the judge. Unless the judge decides to give drug quantities to the jury, the jury decides the issue, then the judge is bound by that decision no matter what. Is that your point? That's our position, Your Honor. Okay. With that, I have nothing further, Your Honor. Mr. Rivera, thank you very much. Thank you so much, Your Honor. Mr. Bloom as well, thank you for your arguments. We'll take the case under review.